## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**T.T.,** a minor, and
**J.A.,** individually and as
    next friend of **T.T.**,

        Plaintiffs,

v.

**BOARD OF EDUCATION OF THE
CITY OF CHICAGO,
SCHOOL DISTRICT 299,**

        Defendant.

No.

Judge

### PLAINTIFFS' COMPLAINT

NOW COME T.T., a minor, and J.A., in his own capacity and as foster parent and next friend of T.T., by their attorney Richard Cozzola of LAF, and as their complaint, state as follows:

### PRELIMINARY STATEMENT

1.     T.T.[1] prevailed against Defendant Board of Education of the City of Chicago, Public School District 299 ("CPS"), in a due process proceeding conducted pursuant to the Individuals with Disabilities Education Act ("IDEA"). *See* 20 U.S.C. § 1415(f).  As a result, Plaintiffs are entitled to payment of attorneys' fees, which Defendant has failed to pay.

### JURISDICTION

2.     This Court has jurisdiction over this matter pursuant to 20 U.S.C. § 1415(i)(3) and 28 U.S.C. § 1331.  Venue is properly located in this District.

---

[1] Pursuant to Federal Rule of Civil Procedure 5.2, T.T.'s initials are provided in lieu of his full name, as he is a minor. *See* Fed. R. Civ. Pro. 5.2(a)(3); *S.F. v. Archer Daniels Midland Co*., 594 Fed. Appx. 11, 12 (2d Cir. 2014) (under Rule 5.2(a)(3), "only a minor's initials should be used in publicly filed documents"). T.T.'s foster parent, J.A., is also referred to by his initials to protect T.T.  *See id.* (noting rule that minor's initials be used "extends to the child's parents"); *see also* 20 U.S.C. § 1417(c) (state and local educational agencies must ensure the confidentiality of any personally identifiable data, information, and records collected or maintained by such agencies).

**PARTIES**

3.      T.T. is an eleven-year-old, foster child in the guardianship of Janet Wukas Ahern, the Guardianship Administrator of the Illinois Department of Children and Family Services ("DCFS"). During the fall of 2017, the Defendant filed three due process complaints against T.T. The Illinois State Board of Education ("ISBE") declined to appoint a hearing officer in the first. An impartial due process hearing officer ("Hearing Officer") found the second complaint insufficient. Finally, on October 31, 2017, the Hearing Officer entered a final order dismissing with prejudice Defendant's third complaint against T.T.

4.      J.A. is T.T.'s current foster parent and, as such, is T.T.'s "parent" within the meaning of IDEA. *See* 20 U.S.C. § 1401(23)(D); 34 C.F.R. § 300.30; 34 C.F.R. § 300.519. J.A. brings this action on his own behalf as T.T.'s "parent" within the meaning of IDEA, as next friend of T.T., and as the prevailing party in the administrative process.

5.      Defendant Board of Education of the City of Chicago is constituted within Illinois for administrative control and direction of public schools in the City of Chicago, is also known as Chicago Public Schools District 299 ("CPS"), and is located in the Northern District of Illinois. Defendant Board of Education of the City of Chicago constitutes a Local Education Agency ("LEA") as defined in 20 U.S.C. § 1401(19), and, as such, is responsible for ensuring the provision of a free, appropriate public education ("FAPE") to children with disabilities residing within its boundaries. *See* 34 C.F.R. § 300.1–2.

**FACTS**

**A. T.T.'s Background and Special Education Programming**

6.      T.T. is an eleven-year-old child, who has resided with J.A., his foster father, in Chicago, Illinois, since March 2016.

7.      T.T. transferred to Stephen F. Gale Elementary Community Academy ("Gale"), one of Defendant's schools, in March 2016.

8.     T.T. has a significant trauma history and has been diagnosed with Attention-Deficit/Hyperactivity Disorder ("ADHD").  T.T. was already eligible for special education services under IDEA and had individualized education program ("IEP") when he transferred to Gale.

9.     During the 2016-2017 school year, the Gale IEP team completed T.T.'s triennial special education re-evaluations and again determined that he was eligible for special education services under the category of Other Health Impairment ("OHI").

10.     Following completion of T.T.'s re-evaluations, several issues arose regarding T.T.'s need for paraprofessional aide support.

11.     On February 13, 2017, the Gale IEP team updated T.T.'s IEP based on the results from his triennial special education re-evaluations.  During this meeting, the Gale IEP team determined that T.T. required shared paraprofessional aide support to appropriately support his academic, social-emotional, and behavioral needs.  It was J.A.'s understanding that shared paraprofessional aide support was included in T.T.'s IEP as the Gale IEP team discussed.

12.     J.A. later discovered that T.T.'s IEP did not include the agreed-upon paraprofessional aide support.  Upon discovering this omission, J.A., through a DCFS educational liaison, requested an IEP meeting to revise T.T.'s IEP and include the previously agreed-upon paraprofessional aide support.

13.     On April 3, 2017, the Gale IEP team reconvened to revise T.T.'s IEP.  During this IEP meeting, the IEP team documented the shared paraprofessional aide support in T.T.'s IEP. —consistent with the team's discussions at the February 2017 IEP meeting.

14.     After T.T.'s IEP revision was finalized, J.A. grew concerned, based on conversations with T.T., that Gale had failed to implement the paraprofessional support in T.T.'s April 2017 IEP.

15.     On May 29, 2017, J.A., through counsel from LAF, sent a letter to Gale's District Representative,[2] Kayci Pickett, requesting the name of T.T.'s paraprofessional aide and a schedule confirming that T.T. was receiving paraprofessional support as required by his April 2017 IEP.

16.     On June 2, 2017, in response, Ms. Pickett provided counsel for T.T. an annotated schedule outlining T.T.'s paraprofessional aide support and the name of T.T.'s paraprofessional aide.

17.     On June 6, 2017, a support staff member from T.T.'s child welfare agency ("CWA support staff") completed a school observation of T.T. and discovered that T.T.'s paraprofessional aide support did not match the schedule that Ms. Pickett had previously provided.  Gale staff also informed T.T.'s CWA support staff member that T.T. was not receiving paraprofessional aide support for many parts of the school day.   In addition, T.T.'s CWA support staff member spoke to Gale staff members who were responsible for implementing T.T.'s IEP, and these individuals seemed unaware that T.T.'s IEP required paraprofessional aide support.

18.     Throughout the spring of 2017, T.T. continued to make concerning statements to J.A. and his CWA support staff members regarding the lack of paraprofessional aide support.

19.     Without the necessary paraprofessional aide support, T.T. struggled academically and behaviorally throughout the spring of 2017.

**B.  T.T.'s State Compliance Complaint**

20.     On August 29, 2017, J.A., through counsel from LAF, filed a state compliance complaint on T.T.'s behalf ("T.T.'s State Compliance Complaint"), pursuant to 34 C.F.R. § 300.151-153 and 23 Ill. Adm. Code 226.570.

---

[2] District Representatives are employees within CPS's Office of Diverse Learner Supports + Services and are "responsible for providing oversight and guidance to networks, schools, and IEP teams to develop IEPs that meet legal requirements." *See* CPS Procedural Manual (Feb. 2018), *available at* https://cps.edu /SiteCollectionDocuments/ODLSS_ProceduralManual.pdf.

21.     The State Compliance Complaint is an alternative method for dispute resolution under IDEA that involves an investigation by the state education agency. *See generally* 34 C.F.R. § 300.151-153.

22.     T.T.'s State Compliance Complaint requested that ISBE investigate CPS's failures: (1) to document agreed-upon paraprofessional aide support in T.T.'s February 2017 IEP, and (2) to implement paraprofessional aide support required by T.T.'s April 2017 IEP.

## C. Defendant's First Due Process Complaint

23.     On September 7, 2017,[3] CPS filed its initial due process complaint notice ("First Due Process Complaint") against T.T. regarding the exact issues raised in T.T.'s State Compliance Complaint.

24.     On September 8, 2017, ISBE informed CPS that the allegations in its First Due Process Complaint did not form a permissible basis for a due process hearing and that an impartial hearing officer could not be appointed for this matter. ISBE also encouraged CPS to work with J.A. and the already appointed ISBE investigator to resolve T.T.'s State Compliance Complaint.

## D. Defendant's Second Due Process Complaint

25.     Nevertheless—four days later—on September 11, 2017, CPS filed another due process complaint ("Second Due Process Complaint") against T.T., asserting the same claims as its First Due Process Complaint.

26.     ISBE appointed Kathleen Fuhrmann ("Hearing Officer") as the impartial hearing officer for this matter and assigned this matter ISBE Case Number 2018-0082.

27.     On September 23, 2017, J.A., through counsel, filed a notice of insufficiency, a motion to dismiss, and a response to the District's Second Due Process Complaint.

---

[3] CPS's First Due Process Complaint was dated September 6, 2017, but upon information and belief, it was not filed until September 7, 2017. CPS sent its First Due Process Complaint to ISBE, but did not initially send a copy to LAF. On September 8, 2017, counsel for both parties received an email from ISBE's Due Process Coordinator, acknowledging receipt of CPS's Complaint on September 7, 2018.

28.     Federal regulations set forth mandatory requirements for a sufficient due process complaint. A notice of insufficiency seeks dismissal of a due process complaint for failing to comply with these requirements. *See* 34 C.F.R. § 300.507; 300.508.

29.     On September 28, 2017,  the Hearing Officer entered an order, granting J.A.'s notice of insufficiency, finding the District's Second Due Process Complaint insufficient under 34 C.F.R. § 300.507, and dismissing the District's Second Due Process Complaint without prejudice.

**E.  Defendant's Third Due Process Complaint**

30.     On October 4, 2017, CPS filed its third due process complaint ("Third Due Process Complaint") against T.T.

31.     CPS's Third Due Process Complaint asserted the same claims as its earlier complaints.

32.     ISBE again assigned this matter ISBE Case Number 2018-0082.

33.     On October 6, 2017—for the first time—CPS contacted LAF to suggest that the parties participate in a resolution or mediation session for this matter.

34.     On October 12, 2017, J.A., through counsel, filed a notice of insufficiency, a motion to dismiss, and a response to the District's Third Due Process Complaint.

35.     On October 17, 2017, the Hearing Officer denied J.A.'s notice of insufficiency, and the parties proceeded to file written briefs regarding J.A.'s Motion to Dismiss.

36.     On October 31, 2017, the Hearing Officer granted J.A.'s Motion to Dismiss and dismissed CPS's Third Due Process Complaint with prejudice. *See* Exhibit A.

37.     CPS did not appeal the Hearing Officer's final decision dismissing its Third Due Process Complaint with prejudice.

**F. Resolution of J.A.'s State Compliance Complaint**

38.     During the time that the Defendant's three due process complaints were pending, T.T.'s State Compliance Complaint was held in abeyance and ISBE's investigation could not go forward, pursuant to 34 C.F.R. § 300.152(c) and 23 Ill. Adm. Code 226.570(e).

39.     Investigation of T.T.'s State Compliance Complaint resumed in November 2017, after CPS's Third Due Process Complaint was dismissed with prejudice.

40.     On March 16, 2018, ISBE issued formal findings and corrective action based on its investigation of T.T.'s State Compliance Complaint. *See* Exhibit B.

41.     Ultimately, ISBE found in T.T.'s favor on both issues regarding his paraprofessional aide support. *Id.*  Notably, as part of its investigation, ISBE interviewed the individual who allegedly had been acting as T.T.'s paraprofessional aide, and this individual informed the ISBE investigator that "he was never assigned to the student and therefore did not provide any services during the 2016-2017 school year." (Exhibit B, p. 7.)

42.     Based on its findings of noncompliance, ISBE ordered CPS to undertake individual and systemic corrective action to address its violations of IDEA. *Id.*

**G. LAF's Claim for Attorneys' Fees**

43.     From September 7, 2017, to the present date, LAF staff have expended considerable time preparing responses and motions related to CPS's three due process complaints.  In total, LAF spent over 70 hours litigating the due process matters that the District initiated.

44.     On June 4, 2018, J.A. and T.T., through their attorneys, submitted a claim for attorneys' fees to Defendant.  The total amount claimed for representation in the due process matter through June 4, 2018, was $21,355.00.

45.     On June 12, 2018, counsel for the Defendant confirmed receipt of LAF's claim for attorneys' fees and stated that the Defendant would respond the following week.

46.     To date, LAF has not received a response to its claim for attorneys' fees.

47.     Since June 4, 2018, Plaintiffs' attorneys' have subsequently expended more time preparing this complaint for attorneys' fees.  Plaintiffs' attorneys have also subsequently incurred a $400.00 filing fee in the filing of this complaint.

48.     Defendant has failed to pay Plaintiffs, T.T. and J.A., the amount of fees reasonably incurred in the due process proceeding described above.

### CLAIM FOR RELIEF: ATTORNEYS' FEES

49.     Paragraphs 1–48 above are incorporated as if set forth fully herein.

50.     As a result of the Hearing Officer's order dismissing the Defendant's complaint with prejudice, Plaintiffs are the prevailing party against Defendant pursuant to 20 U.S.C. § 1415(i)(3)(B).

51.     A dismissal with prejudice constitutes a decision of the case on the merits.

52.     The Hearing Officer's dismissal order expressly granted J.A. the relief that he requested through T.T.'s Motion to Dismiss—specifically, dismissal of Defendant's due process complaints with prejudice.

53.     The Hearing Officer's dismissal order materially altered the legal relationship of the parties in this matter, in that Defendant could no longer refile due process complaints against T.T. regarding the issues raised in his State Compliance Complaint and the investigation of T.T.'s State Compliance Complaint was permitted to proceed.

54.     As the prevailing party, Plaintiffs are entitled to reasonable attorneys' fees as part of the costs of litigation, pursuant to 20 U.S.C. § 1415(i)(3)(B).

55.     Plaintiffs' attorneys' hourly rates are consistent with the rates prevailing in the community for the kind and quality of services furnished, as required by 20 U.S.C. § 1415(i)(3)(C).  LAF's fee structure is based on years of experience in the staff member's current position and is comparable to attorneys working in the Chicago-area in the special education field.

56.     The time expended and billed by Plaintiffs' attorneys in the due process hearing and following the due process hearing to ensure compliance with the Hearing Officer's decision is reasonable and consistent with the overall results obtained, and is therefore compensable under 20 U.S.C. § 1415(i)(3).  Furthermore, Plaintiffs are only seeking reimbursement for time billed by their attorneys and staff in responding to Defendant's due process complaints and for the preparation and prosecution of this complaint.

57.     Finally, CPS's conduct throughout resolution of this matter was especially egregious and directly contradicted federal guidance.  The Office of Special Education and Rehabilitative Services ("OSERS") and the Office of Special Education Procedures ("OSEP") of the U.S. Department of Education ("DOE") have issued specific guidance directing school districts to respect the parent's forum selection for dispute resolution. *See Dear Colleague Letter*, 65 IDELR 151 (OSEP Apr. 2015) ("[T]he Department strongly believes that it is in the best interest of parents and school districts to respect parents' choice of forum for resolution of their disputes . . . .  We strongly encourage public agencies to respect parents' reasonable choice to use the State complaint process rather than a due process complaint hearing.").  In their joint Dear Colleague Letter, OSERS and OSEP also noted that a public agency's decision to file due process after a parent has filed a state complaint increases the cost of dispute resolution for both parties, lengthens the time period for dispute resolution, forces the parent into more adversarial proceedings, and ultimately may prevent a parent from exercising his right to engage in dispute resolution through the state complaint process. *Id.* at 4.  OSERS and OSEP conclude that school districts, which engage in this conduct, "harm the 'cooperative process'" that IDEA contemplates. *Id.* at 4.

58.     In two months, CPS filed three due process complaints against T.T. regarding the same issues T.T. had already raised in his State Compliance Complaint.  CPS also failed to engage in any resolution or mediation efforts until after filing its Third Due Process Complaint.  CPS's conduct evidenced clear disregard for J.A.'s forum selection, resulted in inappropriate and

unnecessary delay for investigation of T.T.'s State Compliance Complaint, increased the cost of dispute resolution for both parties, and impermissibly interfered with J.A.'s and T.T.'s right to engage in dispute resolution through the state complaint process.

## **RELIEF**

59.    **WHEREFORE**, J.A., on his own behalf and as foster parent and next friend of T.T., prays that this Court:

A.    Find that Plaintiffs are the prevailing parties in their administrative proceeding against Defendant pursuant to 20 U.S.C.A. § 1415(i)(3);

B.    Award attorneys' fees and costs in the amount of $21,355.00 for fees and costs incurred in prevailing in the administrative proceeding filed by Defendant;

C.    Award reasonable attorneys' fees and costs incurred to prosecute this Complaint, including the additional $4,260.00 for fees and costs incurred in preparing and filing this Complaint;

D.    Award prejudgment interest; and

E.    Grant any other relief as this court deems just.


Respectfully Submitted,

/s/ Richard T. Cozzola
One of Plaintiffs' Attorneys


Richard Cozzola
ARDC ID # 3127004
LAF (Legal Assistance Foundation)
120 S. LaSalle Street, Suite 900
Chicago, IL 60603
T: 312.229.8356